STATE OF OREGON, *Respondent,*
*v.*
JOSEPH STEPHEN ABBOTT, *Petitioner.*

552 P2d 238

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

*John L. Snyder,* District Attorney, Dallas, argued the cause and filed a brief for respondent.

■■■■■■■

O'CONNELL, J.

(For Court of Appeals opinion, see 24 Or App 111.)

## O'CONNELL, J.

This case is before us on a petition by defendant for review of the decision of the Court of Appeals. *State v. Abbott,* 24 Or App 111, 544 P2d 620 (1976). Defendant was convicted of first degree burglary. The Court of Appeals affirmed, holding that it was not error for the trial judge to refuse to grant defendant's motion for a mistrial after the prosecutor called defendant's alleged accomplice, who had already plead guilty to the burglary, as a witness for the state, knowing that the witness would probably refuse to testify.

We granted review in order to clarify the scope of our holding in *State v. Johnson,* 243 Or 532, 413 P2d 383 (1966). In that case, we held that it was prejudicial error for the state to call a witness who was defendant's alleged accomplice where the state had been informed that the witness would, as he did, exercise his privilege against self-incrimination. We believe that the fact that the witness in this case did not possess a privilege against self-incrimination distinguishes this case from *State v. Johnson,* supra, and therefore we affirm the conviction.

The state's case developed the following facts. A safe containing bonds and other valuables belonging to Elwin Littlejohn was stolen from his residence on October 16, 1974. His daughter Eileen was the only person at home that day. She testified that defendant and Mr. Morgan, both of whom she knew, arrived at the house in a yellow Datsun automobile around 2:30 that afternoon and remained approximately 45 minutes. Shortly after the two men left, Eileen herself departed, leaving a door unlocked. When she returned around 11:30 P.M. the safe was gone.

Other testimony showed that Morgan knew the location of the safe, that the safe was later found about a mile from defendant's residence, and that a yellow Datsun was seen near the Littlejohn residence at around 4:00 P.M. on October 16.

The state proposed to call James Morgan as a witness. Morgan had previously entered a plea of guilty to the burglary and had been sentenced; the period for giving notice of appeal had passed. Defense counsel requested that Morgan be questioned out of the jury's presence to determine whether he would refuse to testify. The request was denied on the ground that Morgan had no right to refuse to testify because his privilege against self-incrimination had been vitiated by his conviction. Thereupon, Morgan was examined by the prosecutor in the presence of the jury. He testified to his age and residence, stated that he knew defendant and that defendant owned a yellow Datsun. Then followed this exchange:

"Q. All right. Mr. Morgan, did you have occasion to go with him [defendant] to the Littlejohn residence on the afternoon of October 16th, 1974?

"A. I refuse to testify.

"Q. And why is that that you refuse to testify?

"A. Because I don't want to.

"Q. Why don't you want to?

"A. Because it's not my place.

"Q. You realize that you don't have any privilege against self-incrimination at this point?

"A. Huh-huh (yes).

"Q. And you realize that your refusal to testify here can lead to a contempt finding by the Court.

"A. Yes."

The jury was removed, and as Morgan persisted in his refusal to testify, he was cited for contempt. Defense counsel then inquired whether the state had known prior to trial that Morgan would refuse to testify. The prosecuting attorney stated that he had been informed by Morgan's lawyer that Morgan "might" refuse to testify. Defense counsel moved for a mistrial, which was denied.

Whether it is improper for the prosecutor to question an accomplice in the presence of the jury when it is know that he will refuse to testify is a question which this court has dealt with in previous cases.

In *State v. Johnson, supra,* the district attorney called as a witness a person who was allegedly associated with defendant in a fraudulent scheme involving the solicitation of termite extermination business. The witness was under indictment for his participation in the scheme, but had not been tried. Counsel for the witness had informed the district attorney that his client would claim his privilege against self-incrimination. We held it was error for the district attorney to call the witness whom he knew would invoke the privilege.

> "Since the witness's right is personal and beyond the control of either the defendant or the state, it is quite clear that the exercise of the right by the witness should be treated as casting no inference either of guilt or innocence." 243 Or at 538.

■ The reason that a claim of privilege should not be allowed to give rise to an inference of guilt was set out by the Court of Appeals in *State v. Mitchell et al,* 6 Or App 378, 389, 487 P2d 1156 (1971), petition for review denied. Quoting from *Billeci v. United States,* 184 F2d 394, 398 (D.C. Cir 1950), the Court of Appeals held:

> "* * * 'The witness in such an incident is exercising a constitutional right personal to himself. That exercise, without more, should not be to the harm of someone else. His answer, if given, might conceivably be that he but not the defendant was guilty of the offense, or it might be that both he and the defendant were guilty; or it might relate entirely to some other offense. * * *' "

As this quotation points out, when a witness invokes the privilege against self-incrimination one can not be sure that a truthful answer might not exculpate the defendant or at least have nothing to do with the defendant's guilt. Yet the jury is likely to conclude in all cases that the witness's silence shows his own guilt and by implication the guilt of his accomplice. Since the act of claiming the privilege is ambiguous and not

subject to cross-examination,[1] it should not be made known to the jury in those cases where the prosecutor knows that the witness is likely to exercise his privilege.

However, the situation is significantly different when, as here, the witness has no privilege to remain silent, having been convicted on a plea of guilty. Here there is not the danger of the silent witness protecting himself at the expense of an innocent defendant, because a previously convicted witness has no reason not to reveal facts which may exculpate the defendant, even if these facts tend to inculpate the witness.

The case before us clearly illustrates why we should distinguish the two situations discussed above. The question which provoked the refusal to testify was:

"* * * Mr. Morgan, did you have occasion to go with him [defendant] to the Littlejohn residence on the afternoon of October 16, 1974?"

It is possible that a truthful answer to this question would have been that, indeed, the witness did go to the burglarized residence on the afternoon of the burglary but that defendant was elsewhere. An unconvicted accomplice could be expected to refuse to answer this question. This would leave the false impression with the jury that both he and the defendant were at the scene. However, an already convicted accomplice would have no reason not to give a truthful answer that only he was present.

■ Viewed realistically, a refusal to testify by an already convicted accomplice cannot stem from his desire to protect himself and must, therefore, stem

---

[1]"* * * [I]t is clear, not only that the presumed answer has not the sanction of an oath, but—what is even more important—that the accused cannot cross-examine. If * * * [such refusals] once do get before the jury, there arises, as we have said, a strong probability that they will be taken as evidentiary." *United States v. Maloney,* 262 F2d 535, 537 (2d Cir 1959).

from his desire to protect the defendant.[2] The defendant cannot complain if the jury chooses to draw the logical inference that a truthful answer would have implicated defendant.[3] This being the logical inference, we see no reason for not permitting the prosecutor to present the matter to the jury through the device of calling a convicted accomplice who the prosecutor knows will make the inference possible by the witness remaining silent.

■ There is language in the case of *State v. Harper,* 33 Or 524, 528, 55 P 1075 (1899) which may appear to be inconsistent with the distinction we draw here. In that case a previously convicted accomplice of the defendant refused to testify. The prosecutor argued to the jury that defendant's guilt could be inferred from the witness's refusal to testify. This court reversed the conviction, at one point stating that "it cannot make any difference whether the witness refuses to testify through fear of criminating himself, or for any other reason." To the extent *State v. Harper* holds that it is

---

[2] We recognize the theroetrical possibility that in some rare circumstances there may be other reasons for the refusal to testify. For instance, the witness might believe that his guilty plea can be overturned on post-conviction relief, and that a truthful answer will jeopardize his chances for acquittal at the hoped for new trial. Alternatively, the witness may fear that a truthful answer, because of what it reveals about modus operandi or surrounding circumstances, would connect him with other crimes. It is even possible that a spiteful witness might prefer facing contempt penalties rather than give an answer that would exculpate defendant. These possibilities are simply too remote to require a rule that would keep the jury from hearing the refusal to testify and drawing the more obvious conclusion.

[3] It should be pointed out that in most cases the jury will not know that the witness-accomplice has plead guilty or been convicted. Evidence that an accomplice has plead guilty or been convicted is inadmissible against a defendant in most circumstances. *State v. Bowker,* 26 Or 309, 38 P 124 (1894); *State v. Riddall,* 251 Or 506, 446 P2d 517 (1968), and *State v. Cole,* 252 Or 146, 448 P2d 523 (1968). It does not appear that the jury in this case knew that Morgan had plead guilty.

Hence the precise inference the jury may draw in these cases is that the silent witness is covering up both his own and defendant's guilt. The point is, however, that the adverse inference drawn against defendant is not an unfair one because realistically the witness is covering up the defendant's guilt, though unconcerned at this stage about his own.

irrelevant whether the claim of privilege is a valid one, it is overruled. We need not now decide whether it is proper for a prosecuting attorney to use a refusal to testify as the basis for a jury argument.

For the reasons stated above, we hold that there was no error in questioning Morgan in the presence of the jury. Therefore, the trial judge was correct in refusing to grant the motion for a mistrial, and the Court of Appeals correctly affirmed the conviction.

The decision of the Court of Appeals is affirmed.