Argued December 19, 1978, reversed and
remanded for trial March 5, 1979

STATE OF OREGON, *Appellant*

*v.*

RICHARD LESLIE MILLS, wtn Richard
Leslie Freel, *Respondent.*
(No. 78-2353, CA 11815)

591 P2d 396

Eileen G. Simpson, Assistant District Attorney, Eugene, argued the cause for appellant. With her on the brief was J. Pat Horton, District Attorney, Eugene.

Robert J. Larson, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

Defendant was indicted for assault in the fourth degree of his four-month-old daughter. ORS 163.160. The circuit court granted defendant's pretrial motion to limit evidence[1] by prohibiting the state from introducing evidence of the defendant's mistreatment of his daughter prior to the date of the crime charged in the indictment and to prohibit the state from questioning or impeaching the defendant's wife as to prior mistreatment of their child. The state appeals both rulings.

The circuit court heard testimony from a deputy sheriff and a Children's Services Division worker regarding a number of injuries to the child which they had observed on occasions prior to the crime. These injuries included two black eyes, bruises on her cheek and a cut on her head. The deputy testified that the defendant told him that the defendant had held the child's nose while feeding her, which sometimes made her cry, that the defendant squeezed her cheek to make her smile, which sometimes caused a bruise, that the defendant had once swung his open hand over her face and struck her accidentally, and that the defendant had "tapped" her a "couple of times," but not very hard. The deputy further testified that the defendant's wife had stated that all of the injuries the defendant claimed to have been accidental occurred when she was not present. When the defendant's wife was questioned as a witness about the child's injuries, she testified contrary to her prior statements. She denied that the child had suffered frequent bruises while alone with the defendant, denied that the defendant slapped the child when she cried, denied that the defendant had once pushed a cotton swab up the child's nose when she was crying, denied that the

---

[1] We note an inexplicable but epidemic tendency to attempt to dignify such motions by resort to Latin. Such English phrases as *preliminary motion* and *motion to limit evidence* are not only more specifically descriptive than the Latin phrase *motion in limine*, but are also understandable. *Res est moderata qualitate materiae suae, non dignitate tituli.*

child received a cut from being thrown on a broken mirror by the defendant, denied that the child had received a black eye from being thrown against the couch, denied that the defendant covered the child's nose and mouth when she cried and denied making all the prior statements which the state expected her to reiterate by her testimony.

## EVIDENCE OF PRIOR MISTREATMENT

■■ Evidence of defendant's prior mistreatment of an assault victim is relevant because it tends to establish intent and to negate the likelihood of accident, inadvertence or self-defense. Although we find no cases precisely in point, we have held in assault cases that evidence of prior assaultive acts against persons in a class with the victim are admissible for that purpose, *State v. Fleischman,* 10 Or App 22, 495 P2d 277 *rev den* (1972); *see also State v. Klamert,* 253 Or 485, 455 P2d 607 (1969). Similarly, it has long been held in cases of sexual assault that prior acts of a similar nature against or with the same victim are admissible for the same purpose. *State v. Pace,* 187 Or 498, 212 P2d 755 (1949); *State v. Start,* 65 Or 178, 132 P 512, 46 LRA(ns) 266 (1913); *Barzee v. Cupp,* 29 Or App 705, 564 P2d 1366 (1977). For similar reasons, we hold that evidence of prior injuries to a child in a prosecution for abuse of that child is relevant where circumstances tend to connect the defendant with those injuries or imply an origin other than accident or other innocent causation.

■ Determination that the evidence is relevant does not end the inquiry. Relevant evidence which tends to blacken the defendant's character may not be admissible if the prejudicial effect outweighs the probative value. *See State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Goss,* 33 Or App 507, 577 P2d 78 (1978); *State v. Pitts,* 29 Or App 59, 562 P2d 562, 30 Or App 1, 566 P2d 182 *rev den* (1977); 2 Wigmore, Evidence, § 364 (1954); 1 Wharton, Criminal Evidence, § § 245- 48

[88]

(13th ed 1972). Professor Wigmore justifies the exclusion as follows:

> "* * * It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. * * *" 1 Wigmore on Evidence 646, § 194 (3rd ed 1940)."

In this case evidence of prior physical abuse of the child has great probative weight regarding intent, knowledge and lack of accident. The inflammatory tendency of the evidence is not so great as to make it likely that the jury will not restrict its consideration of the evidence to those ultimate facts to which the evidence is relevant. Moreover, where the best witness, the victim, is unable to testify due to death or incompetence, the principle of necessity weighs on the side of probative value. Therefore, we conclude that the evidence is admissible and the trial court erred by excluding it.

## PRIOR STATEMENTS

The state also assigns as error the trial court's order prohibiting it either from questioning defendant's wife about his treatment of the victim prior to the crime or from impeaching her with evidence of her prior inconsistent statements. Our disposition of the first assignment of error establishes the relevance of testimony regarding the defendant's treatment of the victim prior to the date of the crime. Defendant contends that the state must be barred from calling the wife as a witness to those events because, when called as a witness at the pretrial hearing, she testified that they did not happen. Defendant further contends that if the wife were called at trial, the state would not be

[89]

authorized to impeach her by prior inconsistent statements because there would be no surprise. Thus, two problems arise: the wife's testimony as to facts and impeachment of that testimony.

■■ In the usual situation, a party calls a witness and asks about the facts. We are aware of no rule that bars a party from calling a witness in the expectation that the witness will testify truthfully, as that party has reason to believe the truth to be. The fact that a witness has given conflicting prior statements or has previously deposed or testified contrary to that expectation does not mean that a party cannot reasonably hope that the witness will change his testimony when called upon to face the jury in the eye and tell them the truth subject to the penalties for perjury. Moreover, a party must sometimes decide to call a witness whose testimony will be unhelpful because, as a matter of tactic, the failure to call an obvious witness may be more damaging in the jury's eyes than the testimony itself. Thus we are aware of no rule of civil or criminal procedure which prohibits the calling of a witness despite the risk that the witness may testify contrary to the interest of the party calling him.[2] The order barring the state from calling the wife as a witness was erroneous.

■ Impeachment of one's own witness is permitted and regulated by ORS 45.590:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.610. However, when a party calls as a witness either an adverse party or the assignor, agent, officer or employe of an adverse party, he shall

[2] This case does not involve a preliminary relevancy ruling based upon fear that calling the witness will prejudice the opposing party. *See, e.g., State v. Johnson,* 243 Or 532, 413 P2d 383 (1966); *cf. State v. Abbott,* 275 Or 611, 552 P2d 238 (1976). Here, the expectation of defendant is that the witness will testify and her testimony will be favorable to him. Whether impeachment will be allowed depends upon how favorable.

[90]

> not be deemed to have vouched for the credit of that witness and he may impeach the credit of that witness in the same manner as in the case of a witness produced by an adverse party."

Whether impeachment of the wife by her prior inconsistent statements is permissible will depend upon whether the answers given by the witness at trial are damaging or prejudicial. The only material effect of the pretrial hearing on the motion to limit evidence is to dissipate surprise at trial, but what constitutes surprise and what constitutes the effect of surprise (or lack of it) are not entirely clear. Theoretically, at least, a party would always be surprised to hear testimony contrary to what it believes to be the truth, whatever may have preceded. Thus we have held that surprise is not a statutory prerequisite for impeachment of one's own witness. *State v. Gardner*, 2 Or App 265, 467 P2d 125 *rev den* (1970) *cert den* 406 US 972 (1972). The Supreme Court, however, assumes that surprise may exist nevertheless and regards it as a factor in weighing the extent of prejudice caused by the testimony. *Rhodes v. Harwood*, 273 Or 903, 544 P2d 147 (1975). Moreover, whether "I don't know" and "I don't remember" answers are damaging can only be determined in the context of trial. Therefore, the permissibility of impeachment is a determination that neither we nor the trial court can make in advance of trial. Accordingly, the order prohibiting the state from impeaching the wife by prior statements was, at least, premature and therefore erroneous.

Reversed and remanded for trial.