STATE of Missouri, Respondent,

v.

Joyce WATSON, Appellant.

No. WD30955.

Missouri Court of Appeals, Western District.

Oct. 1, 1980.

Charles Gallipeau, Kansas City, for appellant; Lee M. Nation, Kansas City, of counsel.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before WASSERSTROM, C. J., Presiding, and DIXON and SOMERVILLE, JJ.

WASSERSTROM, Chief Judge.

Defendant appeals from a conviction by jury for assault with intent to do great bodily harm without malice and a consequent sentence of five years' imprisonment. We affirm.

This prosecution arises by reason of scalding burns suffered by defendant's two and one-half year old son Terrance on January 6, 1978. The state's experts testified that the nature of the injuries showed "forced immersion burn." Defendant testified to the contrary that the burns resulted from her accidentally leaving the bathtub in her house unattended with hot water running

while she went to answer the telephone, and that Terrance climbed into the tub in her absence.

In further support of its case, the state also introduced evidence as to a prior hospitalization and treatment of Terrance in November 1976 for skull fracture, back lacerations and a skin condition on the child's back which was diagnosed by a doctor as a burn.

Defendant's points on appeal are: (1) that the trial court improperly admitted rebuttal testimony by state's witness Brown; and (2) that the trial court improperly admitted hospital records pertaining to the 1976 hospitalization.

## I.

### Brown's Testimony

Defendant's first point on appeal is improper under the requirements of Rule 84.-04(d) and presents nothing for review.[1] Nevertheless, as a matter of grace, the three matters argued by defendant under this point will be reviewed.

### A.

Defendant argues first that Brown's testimony was improper rebuttal in that it failed to contradict defendant's evidence. In this respect defendant states in her brief: "The testimony of James Brown contained no significant difference from that of the defendant * * *." That statement is simply untrue.

During her cross–examination, defendant was questioned concerning statements she made to Brown in November 1976, concerning her treatment of Terrance. Her testimony in that regard was as follows:

"Q. Did you have an occasion regarding this incident to talk to a Mr. Brown who is a social worker?

A. Yes.

Q. Did you admit to him to whipping the child with a belt or switch?

A. I admitted to whipping him with a switch.

Q. Did you admit to him scratching the child on the back?

A. I did not admit scratching him on the back because I did not scratch him on the back.

\* \* \* \* \* \*

Q. You do not recall telling him that you scratched his back causing the laceration marks?

A. I did not tell him that.

Q. You did not tell him that. Okay. Did you tell him that what the doctor thought to be a small burn was an injury Terrance encountered from some form of punishment you had given him?

A. I did not tell him that."

To rebut that testimony, the state called Brown who testified as follows concerning a report which he made concerning that conversation with defendant:

"Q. Okay. Why don't you tell us what that report states?

A. 'Mrs. Watson admitted that she had been whipping the child with a belt and sometimes with a switch with his clothes off. Mrs. Watson also told me that she had scratched the child on the back.'

Q. She had what?

A. She had scratched the child with the fingernails on the back which caused the laceration marks on the child's shoulder. 'She also explained to me that the burn, the dark portion that were [sic] in the center of his back that looked like what the doctor thought was a cigarette burn wasn't a cigarette burn at all because neither one smoked

1. Point Relied Upon (incorrectly titled "POINTS AND AUTHORITIES") number 1 in appellant's brief reads as follows: "THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF JAMES BROWN, OVER APPELLANT'S OBJECTION, INSOFAR AS SAID TESTIMONY WAS IRRELEVANT, CONSTITUTED PROOF OF OTHER CRIMES FOR WHICH APPELLANT WAS NOT ON TRIAL, WAS IMPROPER REBUTTAL, IMPROPER IMPEACHMENT OF APPELLANT, AND WAS OTHERWISE INADMISSIBLE".

and she, she indicated that this dark spot in the center of the back may have been caused by some form of punishment she had given Terrance.'

\* \* \* \* \* \*

A. 'She also explained to me that what the doctor thought was a small burn was an injury Terrance encountered from some form of punishment she had given him.' "

The above quoted testimony demonstrates marked differences between defendant's testimony and Brown's rebuttal testimony. Defendant's first attack upon Brown's rebuttal testimony is therefore without merit.

### B.

■ Defendant next argues that Brown's testimony was inadmissible as extrinsic evidence of prior misconduct unconnected with the crime charged. Her brief admits, however, that Brown's testimony was proper if it tended to establish motive or absence of accident. Brown's testimony does tend to show that defendant purposefully engaged in physical abuse of Terrance in a pattern of what she apparently considered "discipline," and that the January 1978 injuries were not the result of a pure accident as portrayed by her trial testimony. *State v. Hudson*, 521 S.W.2d 43 (Mo.App.1975); *State v. Cook*, 557 S.W.2d 484 (Mo.App. 1977); *State v. Nevels*, 571 S.W.2d 736 (Mo. App.1978); *State v. Mills*, 39 Or.App. 85, 591 P.2d 396 (1979); *Robinson v. United States*, 317 A.2d 508 (D.C.App.1974).

■ Defendant's final contention under this heading is that Brown testified concerning statements made to him by defendant's husband, Carl Watson, and that those statements should have been excluded on the grounds of hearsay and interspousal privilege. Defendant's brief fails to cite any transcript records which would show any testimony by Brown concerning statements made to him by Carl Watson. This failure violates Rule 84.04(h) and renders it very difficult, if not impossible, to intelligently discuss this contention. As the state's brief points out, the transcript does show that Brown identified a report which

stated "Mr. and Mrs. Watson admitted to me and the court that they both whipped the child." However, that answer was in response to a question asked by defendant's attorney on cross-examination. Defendant cannot complain about evidence which is admitted as a result of her own attorney's direct questions. *State v. Stenner*, 591 S.W.2d 123 (Mo.App.1980); *State v. Mayo*, 559 S.W.2d 264 (Mo.App.1977).

### II.

### *The Hospital Records*

■ Defendant objects to the introduction of hospital records pertaining to Terrance's November 1976 hospitalization on the grounds that these records contained certain statements allegedly made by Carl Watson, and defendant argues that such statements violated the rules on hearsay and interspousal privilege. The fatal flaw in this argument is that the hospital records in question were never unconditionally admitted into evidence.

True, the prosecution offered these records and did make proof to qualify them as business records. The trial court, however, had considerable doubt from the beginning whether the records should be admitted and after considerable colloquy with counsel made the following tentative ruling:

"Well, it's not clear to me whether under the circumstances here, because the circumstances aren't clear, there is no way to say who was present and what occasions one [spouse] was present or both [spouses] present or whatever. That is not clear from this record and so I feel that because of that it would be improper for me to admit this record into evidence.

"Now, I am willing to do this: I am willing to receive the record in evidence, but not to be read to the jury and if you want to use that for some other purpose, if you have another witness who shows up and who needs this record, then it is in evidence because it's been properly qualified by the medical—by the person in charge of medical records at Research Hospital. I think this medical record by someone who knows more of the facts might be admissible or might be used to

refresh someone's recollection or for whatever reason it might serve and so I will receive in evidence Exhibit 58, but no parts thereof at this time may be read to the jury . . . ."

As the trial proceeded, no witness appeared who needed the hospital records in question nor was there any witness who could throw any further light upon the circumstances under which Carl Watson made the statements quoted in the hospital records. Accordingly, at the close of all the evidence the court made a final ruling as follows:

"THE COURT: Now, we have pending your offer of six pages out of the Research Medical Center medical records on Terrance Watson, number 250933. I have again read pages 1, 2 and 3, plus the discharge summary and I feel that they should not be received in evidence. Accordingly, your offer is refused. Okay."

Defendant's objections are based on a purported action of the trial court, that is its "admission" of the hospital records, that never occurred. On the contrary, the court expressly excluded this exhibit and it was never read, shown or known to the jury.

No error appears and the judgment is therefore affirmed.

All concur.