AOYAGI, J.
*455 Defendant was convicted of murder, robbery, and other crimes. On appeal, he raises two assignments of error. Both relate to a plea agreement between the state and one of defendant's co-conspirators, Orren, in which Orren committed to invoke his Fifth Amendment right against self-incrimination if called to testify at defendant's trial. In his first assignment of error, defendant argues that the trial court erred in "permitting the state" to deprive defendant of his ability to call Orren as a fact witness. In his second assignment of error, defendant argues that the trial court erred in excluding Orren's plea agreement from evidence. For the following reasons, we affirm.
I. THE CRIMES
Because of the posture of this appeal, we describe both the state's and defendant's versions of events, briefly, based on evidence presented at defendant's trial.
A. The Prosecution Theory
According to the state's theory of the case, defendant was the leader of a conspiracy that resulted in a murder. Defendant contacted *533 the victim, who lived in Grants Pass, and asked him to drive to Portland to sell a large quantity of marijuana to defendant. On the night that the victim drove to Portland, defendant enlisted Orren (defendant's neighbor and close friend), Endicott (Orren's wife), Smith (defendant's girlfriend), and Bettencourt (a friend) to conduct a "smash and grab." The preparation took at least six hours. During that time, defendant stole a handgun from a friend's house and gave it to Orren. Defendant also procured a shotgun that Orren handled.
After several failed attempts to isolate the victim's car in a favorable location, the crime came to fruition in the parking lot behind defendant's and Orren's apartment complex. Orren and Bettencourt approached the victim's car. Bettencourt did not want to proceed when he realized that the victim was still in the car, but Orren said that he wanted to "go get this loot." Orren opened the driver's door, shot the victim with the handgun, and fired again as the *456 victim tried to drive away. (The victim, who was shot in the face and back, was later declared dead at the scene.) Orren and Bettencourt ran back to Orren's apartment. Orren told Endicott that he had killed the victim. Defendant came in and asked, "What the fuck happened?" Bettencourt said that he did not know and to ask Orren. Defendant asked if they got the marijuana. When Bettencourt said no, defendant told Orren and Bettencourt to "[g]o get the package," and one of them swore at him. Defendant ran out of the apartment.
B. The Defense Theory
According to defendant, he and the victim together hatched a plan to steal marijuana from the victim's supplier in Grants Pass. The victim would drive to Portland with the marijuana, and defendant would stage a break-in of the victim's car. The victim was not supposed to be in the car. The victim would report the "theft" to his supplier, and then defendant and the victim would sell the marijuana and split the proceeds. Defendant had not told Orren about the victim being in on the plan. But the plan did not involve guns or violence. Defendant did not know that anyone had weapons. According to defendant, Orren shot the victim "for no apparent reason."
II. THE CHARGES AND PRETRIAL PROCEEDINGS
The state charged defendant, Orren, Bettencourt, and Endicott with multiple crimes. While defendant was awaiting trial, Orren, Bettencourt, and Endicott entered into plea agreements. Bettencourt and Endicott each pleaded guilty to one count of first-degree robbery with a firearm, and each was sentenced to 90 months. Orren pleaded guilty to aggravated murder and first-degree robbery with a firearm; the state agreed to recommend a prison sentence of 30 years to life and not to seek the death penalty, but sentencing was set over until completion of the prosecution of Orren's co-defendants.
All three plea agreements addressed defendant's trial. Bettencourt's and Endicott's plea agreements required them to testify truthfully at defendant's trial. Orren's plea agreement was different. It required Orren to assert his *457 Fifth Amendment rights if called to testify at defendant's trial and also barred him from cooperating with the defense. The stated reason for this provision was to "protect the [s]tate" from "untruthful and/or false testimony." According to the state, as represented to the trial court, Orren had admitted to shooting and killing the victim, but he expressly refused to "snitch" on anyone else. He therefore would not talk to the state about anyone else's involvement.
The relevant part of Orren's plea agreement-which the state now recognizes was "ill-advised"-provides:
"Part II: The defendant, Michael Orren, agrees to the following:
"A. To not testify or otherwise cooperate in any way on behalf of any of the codefendants, State v. Shannon Bettencourt , Clackamas County Circuit Court case CR1400330, State v. Francis Paul Weaver , Clackamas County Circuit Court case CR1400331, and State v. Brittany Christine Endicott , Clackamas County Circuit Court case 1400333. In regards to a trial, hearing, grand jury and any other proceedings involving any of the co-defendants, *534 Mr. Orren agrees to assert his Fifth Amendment Right against self-incrimination and not to testify on behalf of any of the codefendants. This agreement is meant to protect the State from Mr. Orren providing untruthful and/ or false testimony to include untruthful and/or false testimony about the murder and robbery of [the victim] to include, but not limited to, the specific involvement and criminal culpability of the co-defendants.
"B. The failure to comply with any condition(s) of this agreement will result in a finding by the State of non-compliance with the terms and conditions of this agreement, and, accordingly, a request by the state to the trial judge and/or sentencing judge, to so find and to thereby deprive Mr. Orren of any and all benefits of this agreement."
In June 2015, the state filed a pretrial motion. At that time, defendant's trial was scheduled to begin in November. The state expressed a belief that defendant might call Orren to the stand at trial "to assert the privilege in front of the jury" or, alternatively, might offer Orren's plea agreement into evidence "to somehow insinuate that the State [was] keeping material information from [the defense]." The state *458 pointed out that Orren remained in legal jeopardy, asserting, "In the case of a co-conspirator or accomplice, the right against self-incrimination endures until the witness has been convicted, sentenced, and exhausted all appeal rights." It cited State v. Barone , 329 Or. 210, 231-32, 986 P.2d 5 (1999), and State v. Abbott , 275 Or. 611, 616-17, 552 P.2d 238 (1976), in support of that assertion. The state then argued that having Orren invoke his Fifth Amendment rights in front of the jury would violate OEC 513, regarding witness claims of privilege, and that admitting the plea agreement would violate both OEC 402, regarding relevance, and OEC 513. The state asked that defendant "not be allowed to introduce the written plea agreement in [Orren's case], make any reference to the agreement, or otherwise require Mr. Orren to invoke his right against self-incrimination in front of the jury."
The trial court held a hearing on the state's motion in July 2015. The hearing began with Orren's attorney objecting to Orren being called for any purpose. Orren's attorney drew the court's attention to a document, signed by Orren and recently filed with the court, in which Orren objected to being called as a witness "by any party in any civil or criminal matter" and stated that he would "refuse to answer all questions and invoke his right to remain silent" if called. The state pointed out that it had wanted Orren present at the hearing to invoke in person but that Orren's attorney had insisted on a written invocation. Orren's attorney argued that no one could call Orren for any reason because he was still in jeopardy, had previously invoked, and was continuing to invoke.
Defendant (who had not filed a written opposition to the state's motion) argued next. First, he asserted that Orren could not invoke his Fifth Amendment rights because he was no longer in jeopardy or had waived those rights in his plea agreement. Defendant argued that point in detail, including that Orren was no longer in jeopardy under the jeopardy analysis in Barone . Second, defendant explained why he believed Orren's plea agreement was relevant under OEC 402 and satisfied hearsay exceptions in OEC 803. As to relevance, defendant argued that the plea agreement made it reasonable for the jury to infer that Orren had "exculpatory evidence" that the state was trying to hide. Third, *459 defendant asked the court to "look at the language in the plea agreement" in deciding the state's motion and, because the state was "requiring Mr. Orren to be a roadblock to finding the truth," allow Orren's plea agreement into evidence, regardless of whether defendant could call Orren to testify.
The state, which argued last, asserted that Orren's plea agreement was irrelevant because Orren had not provided any information to the state. The state insisted that it was not withholding any exculpatory evidence from defendant. The state then reiterated the arguments in its written motion.
The trial court took the matter under advisement. While it was under advisement, defendant submitted a witness list that included Orren's name.
*535 In August 2015, the trial court ruled on whether Orren "was going to be compelled to come in and testify." It explained that it had reviewed Barone and Abbott and had concluded that the accomplices who were ordered to testify in those cases were differently situated than Orren.[1] Because Orren had not yet been sentenced, the court was "not going to order [Orren] to testify at trial."[2]
*460 As for whether the trial court would allow Orren's plea agreement into evidence, the court reserved ruling. It asked defendant to file a brief explaining how the plea agreement was legally relevant. Defendant subsequently did so, arguing that it was relevant because it would permit the jury to infer that "Orren has exculpatory evidence which the State is requiring him not to provide-to get his deal." Defendant then compared the plea agreement to witness tampering and quoted from State v. York , 291 Or. 535, 632 P.2d 1261 (1981), in which the Supreme Court warned that defendants cannot wait until trial to raise an issue about prosecutorial interference with witnesses. Instead, "[w]hen access to witnesses is impaired by prosecutorial misconduct, the defendant must first take appropriate action to overcome the obstacle sought to be imposed by the prosecutor," if possible, specifically by seeking a remedy that "may eradicate the possible prejudice" and "cure the problem." Id . at 543, 632 P.2d 1261. Defendant asserted that he was "taking those steps here and now" by seeking admission of the plea agreement.
In November 2015, the court held another hearing on the admissibility of Orren's plea agreement. The state reiterated its same arguments, including that the plea agreement was inadmissible under OEC 513. It again stressed that it was not withholding any exculpatory evidence. Defendant responded that the state was obviously lying and "ha[d] something to hide" or else it would not have required Orren not to testify as part of his plea agreement. Defendant described the plea agreement as "tantamount to tampering with a witness by making him unavailable." At the conclusion of the hearing, the trial court ruled, based on OEC 513, that it would not admit Orren's plea agreement into evidence because of its reference to the Fifth Amendment. The court stated in its written order, "The court will not allow the plea agreement to be introduced as evidence during trial because of the reference to Mr. Orren invoking his 5th Amendment right against self-incrimination."
Trial began in late February 2016. Consistent with the court's pretrial rulings, defendant did not call Orren to testify or offer his plea agreement into evidence. During jury instructions, the trial court instructed the jury: "The *461 jury is not to consider the fact that Michael Orren did not testify at this trial, or construe it against any party."
The jury convicted defendant of murder with a firearm, ORS 163.115 (2013), two counts of robbery in the first degree with a firearm, ORS 164.415, conspiracy to commit robbery in the first degree with a firearm, *536 ORS 164.415 and ORS 161.450, robbery in the second degree with a firearm, ORS 164.405, conspiracy to commit robbery in the second degree, ORS 164.405 and ORS 161.450, and felon in possession of a firearm, ORS 166.270. Defendant appeals.
III. FIRST ASSIGNMENT OF ERROR
Article I, section 11, of the Oregon Constitution provides, in relevant part, that, "[i]n all criminal prosecutions, the accused shall have the right to * * * have compulsory process for obtaining witnesses in his favor." The compulsory process clause "protects both the right to the attendance of the witness and the testimony of the witness." State v. Mai , 294 Or. 269, 272, 656 P.2d 315 (1982). "In this respect, we construe the state compulsory process clause in the same way as the Supreme Court [has] construed the virtually identical federal counterpart," that is, the Sixth Amendment to the United States Constitution. Id . The Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor." That provision has been described by the federal courts as "protect[ing] a defendant from loss of defense witness testimony through improper government interference." State v. Huffman , 65 Or. App. 594, 598-600, 672 P.2d 1351 (1983).
In his first assignment of error, defendant contends that the trial court erred in "permitting the state to deprive defendant of his right to call David Orren as a witness over defendant's objections." Essentially, defendant argues that (1) the prosecution violated defendant's compulsory process rights under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution, by entering into a plea agreement with Orren that made Orren unavailable as a witness at defendant's trial; and (2) the trial court "permitted" the state to *462 do so. In response, the state argues that defendant's first assignment of error is unpreserved or, alternatively, fails on the merits. In so arguing, the state does not defend Part II.A of Orren's plea agreement. To the contrary, it is candid on this point in its answering brief:
"As a preliminary matter, the state wishes to emphasize that it understands-and does not contest-that plea agreements such as the one at issue in this case are disfavored because of the potential impact on other defendants' constitutional rights to compulsory process. For that reason, the state acknowledges that its decision to enter an agreement requiring the exercise of a privilege was ill-advised. But the question before the court in this case is whether defendant is entitled to reversal of his conviction based on his claim that his constitutional compulsory-process rights were violated by the agreement. The record does not support his claim of a constitutional violation."
We begin our analysis of the first assignment of error by observing that defendant is decidedly vague as to how exactly the trial court "permitted" the state to allegedly interfere with his compulsory process rights. In his opening brief, defendant argues extensively about compulsory process, but he does not clearly identify the ruling to which he is assigning error. See ORAP 5.45(3), (4)(a) (requiring identification of challenged ruling in opening brief). Only at oral argument, in response to questioning, did defendant expressly identify the ruling that is the subject of his first assignment of error: the trial court's ruling that, because Orren had not yet been sentenced, it was "not going to order him to testify at trial."
Upon scrutiny, however, that ruling was quite narrow in scope and did not include any ruling on compulsory process issues.
It was the state that first raised the prospect of defendant calling Orren to the stand, when it asked that defendant not be permitted to call Orren to invoke the Fifth Amendment in the jury's presence. Shortly thereafter, Orren filed a written invocation of his Fifth Amendment rights. The court then held a hearing at which defendant never expressed any interest in calling Orren to invoke in front of the jury. Instead, defendant argued that Orren *463 could not invoke the Fifth Amendment (with or without the jury present) because he was no longer in jeopardy or had waived his Fifth Amendment *537 rights. In other words, rather than respond to the issue on which the state had moved, defendant argued that Orren could be compelled to testify because he no longer had any Fifth Amendment rights to invoke.
In that context, when the trial court ruled that it was "not going to order [Orren] to testify at trial," it was ruling on a very specific issue-whether Orren was still in jeopardy and therefore could not be compelled to testify because of his rights against self-incrimination. That is clear from the court's reliance on Barone and Abbott (see 296 Or. App. at 459 n. 1, 439 P.3d at 535 n. 1), from its statement about Orren not having been sentenced yet, and from its description of what it was denying as defendant's motion (see 296 Or. App. at 459 n. 2, 439 P.3d at 535 n. 2). Defendant seizes on the general wording of the court's oral ruling to try to characterize it as a compulsory process ruling, but that was not the issue on which the court ruled because that was not the issue before it.
Defendant never mentioned compulsory process in connection with the state's motion, nor did he make any reference to Article I, section 11, of the Oregon Constitution or to the Sixth Amendment of the United States Constitution. Of course, that in and of itself is not dispositive of preservation. What is dispositive, as to the first assignment of error, is that defendant never asked the court to do anything about Orren's availability (or lack thereof) to testify. For example, defendant never asked the court to determine whether the plea agreement had affected Orren's decision to invoke the Fifth Amendment[3] and, if so, to declare Part II.A unenforceable or otherwise free Orren to testify. See *464 York , 291 Or at 543, 632 P.2d 1261 (when prosecutorial misconduct impedes defense access to a witness, the defendant should, if possible, ask the court for a remedy that will "overcome" the obstacle sought to be imposed by the prosecutor and "cure" the problem).[4] Although the trial court could not have ordered Orren to testify while he remained in legal jeopardy-and it should be noted that the court ruled only that it would not order Orren to testify-it could have potentially freed Orren to testify voluntarily, if defendant had established prosecutorial misconduct or a compulsory process violation and requested such a remedy. Defendant did not do so. The only argument that he made regarding Orren's testimony was that Orren was no longer in jeopardy or had waived his Fifth Amendment rights and therefore was similarly situated to the accomplice in Barone who was ordered to testify.
Although defendant on appeal emphasizes his repeated criticism of Orren's plea agreement to the trial court, the timing and context of that criticism is important. At the first hearing on the state's motion, defendant commented negatively on the plea agreement, but he did so in support of his argument for allowing admission of the plea agreement into evidence at trial. Defendant described the basic terms of Part II.A, stated that "[t]he only implication there is [that] Mr. Orren has exculpatory evidence which the State is requiring him not to provide in order to get his deal," and concluded:
"The State is requiring Mr. Orren to be a roadblock to finding the truth. And based on that, Your Honor, Mr. Weaver should be allowed to introduce into evidence, if he can't call Mr. Orren. But even if he can, in any way, shape, or form , he should be able *538 to introduce the petition to enter a plea of guilty, the plea agreement, and the judgment and the amended judgment. And he should be able to argue any and all inferences he can come up with regarding those documents."
(Emphasis added.)
*465 Later, defendant ramped up his criticism of Orren's plea agreement, characterizing it as equivalent to "witness tampering" and even once using the term "prosecutorial misconduct" in the brief that he filed after the August hearing. Defendant made those arguments after the court ruled on the issue of Orren testifying, however, and, again, he made them in support of the trial court allowing admission of Orren's plea agreement at defendant's trial, not as a basis to release Orren from the plea agreement or otherwise free him to testify.[5] The only remedy that defendant requested for any possible prosecutorial misconduct regarding Orren's plea agreement was admission of the plea agreement at defendant's trial.
Defendant's first assignment of error thus relies on a mischaracterization of the challenged ruling. The thrust of defendant's argument on appeal is that the trial court should have protected defendant's compulsory process rights by ordering Orren to testify as a fact witness, but that it instead "permitted" the state to interfere with those rights by ruling that it would not order Orren to testify. That argument is unpreserved. Defendant never mentioned his constitutional rights to compulsory process, never cited the federal or state constitutional provisions on which he now relies, and never cited a case involving compulsory process rights. More importantly, defendant never asked the trial court to do anything to free Orren to testify voluntarily, let alone anything that would allow it to order Orren to testify, and thus prevent the state from interfering with defendant's compulsory process rights. The only argument that defendant made with respect to Orren testifying was that Orren was already in a position where he could be compelled to testify as a fact witness because he was no longer in jeopardy or had waived his Fifth Amendment rights. The trial court rejected that argument, and, on appeal, defendant does not challenge the legal correctness of that ruling. Rather, defendant effectively challenges a ruling that the court never made on an issue that was not presented.
*466 "Each assignment of error must demonstrate that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court." ORAP 5.45(4)(a). That includes identifying how and when the trial court ruled on the issue. See ORAP 5.45 (4)(a)(i), (ii). "Generally, an issue not preserved in the trial court will not be considered on appeal." State v. Wyatt , 331 Or. 335, 341, 15 P.3d 22 (2000) ; see also ORAP 5.45(1) (stating that, except for discretionary plain error review, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court"). Even constitutional claims generally must be preserved for appeal. See State v. Woods , 284 Or. App. 559, 564, 393 P.3d 1188 (2017) ("even an argument pertaining to due process rights must be properly preserved to be considered on appeal"); State v. Driver , 192 Or. App. 395, 405, 86 P.3d 53 (2004) (concluding that defendant's argument that he was denied his right to present a defense under the compulsory process clauses of the Oregon and federal constitutions was not preserved).
For the reasons explained, we agree with the state that defendant's first assignment of error is unpreserved. Further, defendant has not requested plain error review; that is, he does not contend that the trial court committed plain error by failing to intervene sua sponte to determine whether Orren would have testified but for the plea agreement and, if so, to prevent the state from interfering with Orren's availability to testify.[6] The preservation issue is therefore dispositive.
*539 See State v. Ardizzone , 270 Or. App. 666, 673, 349 P.3d 597 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so * * *. Defendant does not request plain error review in this case, and we therefore do not undertake that analysis."). We reject the first assignment of error.
IV. SECOND ASSIGNMENT OF ERROR
In his second assignment of error, defendant argues that the trial court "erred in refusing to allow defendant to submit evidence of and make reference to Orren's plea *467 agreement with the state." The defense theory was that Orren acted alone and killed the victim unexpectedly during what was supposed to be a staged theft. Defendant wanted to admit Orren's plea agreement, in which Orren committed to invoke the Fifth Amendment if called to testify, "to show that the state was trying to keep evidence from the defense and the jury" and "was motivated to do so because Orren's testimony would have been helpful to defendant."
The trial court excluded Orren's plea agreement from evidence based on OEC 513, which provides:
"(1) The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn from a claim of privilege.
"(2) In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.
"(3) Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom."
Defendant argues that the trial court erred in relying on OEC 513 to exclude Orren's plea agreement. Specifically, defendant argues that OEC 513 is not implicated because his purpose in admitting the plea agreement would have been to comment on the state's conduct, not to comment on Orren's invocation of his Fifth Amendment rights. We are unpersuaded given the broad language of OEC 513.
Defendant wanted Orren's plea agreement in evidence so that he could urge the jury to infer from Orren's invocation of his Fifth Amendment rights, in the context of the plea agreement, that Orren's testimony would have been favorable to defendant if he had testified. Orren did not actually invoke his Fifth Amendment rights in front of the jury, but the plea agreement expressly referred to Orren invoking his Fifth Amendment rights if called to testify, and the argument that defendant wanted to make depended for its logic on the jury understanding that Orren either had invoked outside its presence or would invoke if called.
*468 As such, we do not see how the plea agreement could be admitted without running afoul of OEC 513. First, defendant sought to comment to the jury on the reason that Orren was invoking his Fifth Amendment rights, which is a comment on a claim of privilege in contravention of OEC 513(1). The fact that the plea agreement supplied the reason, rather than the invocation itself, does not divorce the comment from the invocation. Second, defendant sought to have the jury infer from Orren's silence, brought about by his claim of privilege, that Orren's testimony would have been favorable to defendant. That requires drawing an inference from a claim of privilege, which also contravenes OEC 513(1). Finally, defendant sought to bring the jury's attention to the fact that Orren was not testifying because he was invoking the Fifth Amendment. That contravenes OEC 513(2), which requires that proceedings in jury trials "be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury." It is notable that OEC 513(2) says "without the knowledge of the jury," not only outside the presence of the jury.
For each of those reasons, we agree with the state that the trial court did not err in excluding Orren's plea agreement from the evidence at trial based on OEC 513. In so concluding, we note that defendant has never argued that his compulsory process rights trumped OEC 513, i.e. , that admission of *540 Orren's plea agreement was a permissible remedy for a compulsory process violation even if OEC 513 otherwise would require exclusion of the plea agreement.[7] Nor did defendant ever ask the trial court to admit a redacted version of the plea agreement, with the reference to Orren's invocation of the Fifth Amendment redacted.[8] Rather, as he did in the trial court, defendant argues that OEC 513 does not apply and that the plea agreement should have been *469 admitted in its entirety. Given the broad language of OEC 513, we reject that argument.
V. CONCLUSION
Having concluded that neither of defendant's assignments of error present a basis for reversal, the judgment of the trial court is affirmed.
Affirmed.

In Abbott , 275 Or. at 614-17, 552 P.2d 238, the state called an accomplice, who it was undisputed was no longer in legal jeopardy, to testify at the defendant's trial. The accomplice refused to testify-which, over the defendant's objection, occurred in front of the jury-and was held in contempt. The Supreme Court recognized that the jury likely inferred from the accomplice's refusal to testify that the defendant was guilty. Because the accomplice was no longer in legal jeopardy, however, it held that the trial court had not erred in ordering him to testify. Similarly, in Barone , 329 Or. at 230, 986 P.2d 5, the state called an accomplice to testify, but he refused and was held in contempt. The dispositive issue was whether the accomplice remained in legal jeopardy, where he had been sentenced and had exhausted his direct appeals but hoped to pursue post-conviction relief in the future. The Supreme Court concluded that "[t]he possibility of future prosecution based on his testimony at defendant's trial was too remote to resurrect [the accomplice's] Fifth Amendment privilege." Id . The trial court therefore did not err in ordering him to testify.

The trial court referred to the pending motion as defendant's motion. That was likely because of the evolution of the issue before it. The state had initially expressed concern that defendant might call Orren to invoke the Fifth Amendment in front of the jury. In response, defendant expressed no intention to do that; instead, he relied on Barone to argue that Orren could not validly invoke the Fifth Amendment (as he was no longer in jeopardy or had waived his Fifth Amendment rights) and therefore could be ordered to testify. The trial court's August 2015 ruling focused on defendant's argument.

It is unknown whether the plea agreement affected Orren's availability to testify. The state argues that it is reasonable to infer on the existing record that Orren would have invoked the Fifth Amendment regardless, while defendant argues that it is reasonable to infer that Orren would have testified but for the plea agreement. In our view, the record is too underdeveloped to permit either inference. See State v. Mays , 269 Or. App. 599, 619-622, 346 P.3d 535 (2015) (trial court would have had to engage in fact-intensive inquiries to determine whether the defendant's compulsory process rights were violated, including whether the prosecutor had engaged in misconduct, whether it had "some effect on the witness's testimony," and whether it was harmless).

We note that York involved alleged prosecutorial misconduct but did not raise compulsory process issues, because the prosecutor had allegedly interfered only with pretrial access to witnesses. Defendant relied on York in arguing for admission of Orren's plea agreement, however, and York gives some insight into the Oregon Supreme Court's view of appropriate remedies for prosecutorial interference with witness access.

At the second hearing, while previewing his anticipated brief on relevance, defendant did ask the court to reconsider its prior ruling on Orren's testimony. However, that request was specifically directed to reconsideration of defendant's waiver arguments.

We express no opinion on the viability of a plain-error argument. We note the absence of a request only to explain why preservation is dispositive.

We are unaware of any precedent for such an argument and do not mean to suggest that defendant should have made such an argument. We seek only to make clear what defendant has and has not argued and, thereby, the scope of our ruling.

To the extent that there was any way for defendant to make an argument about Orren's plea agreement without bringing to the jury's attention that Orren had invoked his Fifth Amendment rights, defendant has never articulated such an argument.