Argued October 26, reversed with instructions November 23, 1970

## STATE OF OREGON, *Respondent,*
### *v.* DARRELL HITESHEW,
#### *Appellant.*
476 P2d 935

*Sam A. McKeen*, Klamath Falls, argued the cause and filed the briefs for appellant.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

The defendant was indicted for first degree murder and convicted of manslaughter from which conviction he appeals.

There are several assignments of error, only two of which are necessary to consider.

Evidence showed that defendant was a one-armed farm laborer who, on occasion, frequented houses of prostitution. There was evidence that in 1967 a Negro prostitute lured him into a situation where defendant claimed two Negro men shot him in the back and robbed him. The men were not apprehended, but the woman was prosecuted for attempted homicide and acquitted. Defendant recovered from his severe wound. Thereafter, when he contacted prostitutes he carried a pistol. On January 7, 1969, he accompanied a Negro prostitute to her abode. There he shot and killed her. His defense was that after they went inside she signalled someone outside; a Negro man came in, then fled when defendant shot at him. He shot the prostitute when it appeared to him that she was going for a gun in the dresser. (A loaded gun was found under the mattress

on the adjacent bed.) Defendant fled and was apprehended about a week later in Coos County.

The district attorney and three police sergeants went to Coos County to get defendant and interrogated him there on January 14. The evidence was that two officers and the district attorney were present for most of the questioning, and that the other officer was present part of the time. On trial, in an *in camera* hearing, part of defendant's statements made there were excluded by the trial judge. This part was everything that was said after a point where the trial judge determined that the officers had used trickery in getting defendant to make incriminating statements. Among statements the court ruled could be received in evidence was one attributed to the defendant by Officer Jones, substantially as follows:

"A * * * [H]e was asked about the girl, that the girl was dead, he said 'If she was, he was glad she was dead, but, that he didn't shoot her.' He said 'If you lined up ten niggers against the wall, I could shoot them all.' He said something about * * * he was shot before, and nothing was ever done about this * * *."

Although the officers recalled the substance of this statement, none of them had made any notes of it at the time of the interrogation. The defense was not made aware of this very damaging alleged statement prior to trial. The following discovery order was made by the court on February 3:

"* * * The District Attorney be required to produce for the inspection of the defendant all papers and documents that contain any written statements, admissions or confessions by defendant. whether signed or unsigned, including any notes of interrogating officers.

"This order does not include any police reports

*unless said police reports contain the only notations of any aspect of the defendant's statement \* \* \*."* (Emphasis supplied.)

On cross-examination Officer Jones disclosed that on January 15, 16 or 17, he wrote a report in which he included the statement attributed to defendant.

"Q \* \* \* I didn't kill her, but if she is a nigger, I'm glad she is dead, if you lined up 10 niggers against the wall, I would shoot every one of them."

Defendant's counsel moved for a mistrial when it became apparent that this report had not been shown to him in compliance with the discovery order. The motion was denied, the trial judge indicating he thought that the order was more comprehensive than he should have signed, under ORS 133.755,① and that the withholding of the statement was not wilful on the part of the district attorney because he didn't have the statement. As previously noted, the testimony was that the district attorney accompanied the police officers to Coos County and sat in while they interrogated defendant.

■ We think the motion should have been allowed. It was already apparent to the trial judge that the police officers had engaged in trickery in getting admissions from the defendant to convict him. The court properly excluded from evidence statements made by defendant thereafter. It seems evident that the prosecution sought to conceal the most damaging admission they attributed to defendant from him and counsel prior to

---

① ORS 133.755 provides:

"(1) \* \* \* [A]fter \* \* \* indictment \* \* \* upon a showing \* \* \* the court may order the district attorney to permit the defendant to inspect \* \* \* written statements or confessions made by the defendant \* \* \*."

trial, in defiance of the court's order. These tactics were unfair.

■ Another assignment of error relates to direct examination of Officer Jones in the jury's presence about defendant's admissions. For nearly two days the court had heard testimony *in camera* about the voluntariness of the admissions, and had ruled that any admissions made after the trickery was practiced on defendant could not be received. Nothing had been said *in camera* about any statements defendant had made to the effect that he had told someone that if he got a chance "he would kill a nigger." In the presence of the jury, immediately after the court had allowed Officer Jones to testify about the admissions we have discussed in previous paragraphs of this opinion, the following leading question was asked of Officer Jones by the district attorney.

"Q  Do you recall him saying anything about telling Jim and Alice that if he ever got a chance he would kill a nigger?"

Officer Jones answered "Yes." Then the following occurred:

"Q  Do you recall the statement—his statement to that, what was his statement?

"A  Not exactly, no.

"Q  What would be—

"MR. McKEEN: I'll ask that this be determined outside * * *."

*In camera,* it developed the alleged statements were inadmissible under previous rulings of the court because they came after the point where trickery was practiced. Defense counsel asked to have the testimony stricken and the jury asked if they could put the district attorney's leading question and the answer out

of their minds completely. The judge said that he would not ask them that, and counsel moved for a mistrial which was denied.

When the jury returned the court said:

"* * * [T]he last question by the district attorney has been stricken, and the jury is instructed to disregard it * * *."

The "last question" by the district attorney was not the objectionable leading question. Some of the jury may have realized that the judge meant the next to the last question *and its answer*, but we cannot assume that to be so.

Authority need not be cited for the proposition that leading questions on direct examination are improper. When they place inadmissible and prejudicial evidence before a jury they inject error into the case. Where the error is correctable and corrected, such errors are held not to justify reversal. However, where the prosecution has engaged in unfair tactics, followed by inadequate correction of prejudicial error, we conclude that there must be reversal based upon cumulative error. Our discussion in *State v. Amory*, 1 Or App 496, 464 P2d 714 (1970), is appropriate to this case.

Reversed and remanded for a new trial.