Argued February 19, reversed and remanded for new trial
March 17, 1975

STATE OF OREGON, *Respondent, v.* GEORGE
BRIAN SHAW (No. 82784), *Appellant.*

532 P2d 1143

*John Henry Hingson III,* Oregon City, argued the
cause for appellant. With him on the briefs were
Misko, Njust & Hingson, Oregon City.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent. With

him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

Defendant George Brian Shaw was found guilty of attempted theft in the first degree after a jury trial. In light of our conclusion that the conviction must be reversed and the case remanded for a new trial, we find it necessary to discuss only defendant's claim of prosecutorial misconduct in the cross-examination of Shaw's co-indictee, William Edward Meador.

According to the prosecution's theory, Shaw and Meador proposed a plan to one Deborah Ann Clemans whereby Ms. Clemans' automobile would be deliberately driven into Shaw's already damaged automobile, and the insurance proceeds split among the three. Prior to its execution, Ms. Clemans contacted the police and fully cooperated with them in their investigation. Thereafter, the staged accident took place, after which Shaw made claim on Ms. Clemans' insurance company. Shaw and Meador were subsequently arrested and indicted on charges of attempted theft in the first degree. Meador's trial was scheduled to take place after the Shaw trial.

Meador was called as a defense witness during the Shaw trial. On cross-examination, the prosecution queried Meador as to whether he had been involved in a prior accident concerning the Shaw automobile in Seattle. Meador refused to answer stating:

"A    Not without an attorney. I am not going

to answer any more questions. I am—I did not come here to be put on trial.

"MR. HOWLETT [counsel for defendant]: We move for a mistrial.

"THE COURT: Are you telling me, Mr. Meador, that you no longer wish to answer any further questions? Just answer that yes or no.

"A  Not any further questions.

"THE COURT: Would you take the jury out please?"

Out of the presence of the jury, the following transpired:

"THE COURT: You have to answer the question, unless you wish to claim your Fifth Amendment privilege, do you understand what I mean by that?

"A  Until I can have a conversation with Mr. Dillon, my lawyer of record, I think maybe I had better do that.

"MR. MILLER [Deputy District Attorney]: I ask that that be put on the record in front of the jury.

"THE COURT: We don't need to do that.

"MR. MILLER: I ask that it be put on the record.

"THE COURT: It is on the record what he said.

"MR. MILLER: May I ask a question?

"THE COURT: Yes.

"Q  (By Mr. Miller)  It is my understanding, Mr. Meador, that you refuse to answer any more of my questions on the grounds that your answer may tend to incriminate you?

"THE COURT: He can ask that question.

"THE WITNESS: That is my right as a citizen of the United States.

"THE COURT: Is that the reason?

"THE WITNESS: That would be the reason until I cover it with my attorney.

"* * * * *

"[In the presence of the jury] Q (By Mr. Miller) Mr. Meador, would it be your intention to refuse to answer any more of my questions?

"MR. HOWLETT: Objection. That is not proper cross examination. It is none of his business whether the witness is going to answer questions or not. I move for a mistrial. He is deliberately trying to induce the witness to refuse to answer questions.

"THE COURT: I will sustain the objection to that question. The jury will disregard that matter. The motion will be denied.

"Q (By Mr. Miller) Mr. Meador, will you answer any more questions about this incident from Mr. Howlett or myself?

"MR. HOWLETT: I object on the same grounds and reasons."

In *Namet v. United States,* 373 US 179, 83 S Ct 1151, 10 L Ed 2d 278 (1963), the United States Supreme Court discussed the problem of avoidable prosecutorial reference before the jury to a witness's claim of privilege. It declared:

"None of the several decisions dealing with this question suggests that reversible error is invariably committed whenever a witness claims his privilege not to answer. Rather, the lower courts have looked to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error. First, *some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences*

*arising from use of the testimonial privilege
\* \* \* ."* (Emphasis supplied.) 373 US at 186.

In *State v. Johnson,* 243 Or 532, 413 P2d 383 (1966), the Oregon Supreme Court held it reversible error for the prosecution to call the defendant's alleged accomplice to the stand, after defendant's counsel had informed the court and prosecutor that the subject witness intended to invoke his privilege against self-incrimination. The court observed:

"The refusal of a witness to answer questions on the basis of his constitutional right against self-incrimination is the personal privilege of the witness, a matter over which the defendant has no control. [Citations omitted.]

"Since the witness's right is personal and beyond the control of either the defendant or the state, it is quite clear that the exercise of the right by the witness should be treated as casting no inference either of guilt or innocence." 243 Or at 537-38.

In *State v. Hiteshew,* 4 Or App 58, 476 P2d 935 (1970), the prosecution elicited by a leading question testimony from a witness which had previously been ruled inadmissible *in camera.* There we said:

"Authority need not be cited for the proposition that leading questions on direct examination are improper. When they place inadmissible and prejudicial evidence before a jury they inject error into the case. Where the error is correctable and corrected, such errors are held not to justify reversal. However, where the prosecution has engaged in unfair tactics, followed by inadequate correction of prejudicial error, we conclude that there must be reversal based upon cumulative error. Our discussion in *State v. Amory,* 1 Or App 496, 464 P2d 714 (1970), is appropriate to this case." 4 Or App at 63.

In oral argument, the state here conceded that the prosecutor ignored the court's ruling. Nevertheless, the state urges that the defendant was not prejudiced thereby, and thus the judgment should be affirmed under Oregon Constitution, Art VII, § 3. In *State v. Hunt,* 15 Or App 76, 514 P2d 1363 (1973), Sup Ct *review denied* (1974), we said:

> "* * * However, as to the former line of questioning regarding defendant's failure to make a statement to Officer Hailey in the street, it is at least equally likely that this was an attempt to put before the jury the fact that defendant exercised her constitutional right not to incriminate herself. Such tactics are impermissible * * *." 15 Or App at 81.

Here, too, we think it clear that the principal purpose of the repeated question was to seek to require the witness Meador, who was also a co-indictee, to claim repeatedly before the jury his Fifth Amendment right.

In *Hunt,* we held that since the defendant herself took the stand and in effect admitted the commission of the crime charged, the error described therein was not prejudicial. No such situation existed in this case.

In the instant case, the prosecutor made a flagrant, unnecessary, and twice reiterated effort to capitalize on Meador's assertion of his Fifth Amendment right by restating the question before the jury. His final reference to such refusal came immediately after the court had sustained an objection to an almost identical question. We think it clear this was "prosecutorial misconduct."

Reversed and remanded for new trial.