Argued and submitted January 17, reversed December 18, 2019

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## EDGAR RODRIGUEZ,
*Defendant-Appellant.*

### Florence Municipal Court
1700033; A164217

456 P3d 312

Defendant appeals from a conviction for contempt of court entered following his refusal to testify, following his invocation of his right against self-incrimination under Article I, section 12, of the Oregon Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution, in a matter resulting from a traffic accident. Defendant argues that the trial court erred in concluding that he could be compelled to testify or be found in contempt for refusing to do so. In response, the state argues that defendant's blanket invocation was improper, amounting to a refusal to take the witness stand at all. *Held*: While a blanket invocation of self-incrimination is normally impermissible, here, because defendant's refusal to testify came after the trial court had ruled that defendant could not invoke his right against self-incrimination at all, the trial court—not defendant—short-circuited the question-by-question process that should have occurred. Accordingly, the trial court erred when it found defendant in contempt of court.

Reversed.

Richard Brissenden, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, and Egan, Chief Judge, and James, Judge.

JAMES, J.

Reversed.

**JAMES, J.**

Defendant appeals a conviction for contempt of court entered following his refusal to testify in the matter of *City of Florence v. Jordan Howell*,[1] despite an offer of immunity by the state. We conclude that the immunity offered in this case was insufficient to extinguish defendant's rights against compelled self-incrimination under Article I, section 12, of the Oregon Constitution. Accordingly, we reverse.

The facts are undisputed by the parties. Following a traffic accident, the state charged defendant with refusing a breath test, ORS 813.095; operating an unsafe vehicle, ORS 815.020; driving under the influence of intoxicants, ORS 813.010; driving while suspended, ORS 811.182; failing to perform the duties of a driver, ORS 811.700; and initiating a false report, Florence City Code 6-1-1-B. During the course of that prosecution, Jordan Howell, an associate of defendant's who was present during the accident, provided an affidavit in which he averred that he was the driver of the vehicle, not defendant, and that he had not observed defendant intoxicated.

Defendant ultimately entered a plea of no contest to driving while suspended, initiating a false police report, and refusing a breath test. The remaining charges were dismissed pursuant to plea negotiations. Following defendant's conviction, the city charged Howell with false swearing and subpoenaed defendant to testify in Howell's prosecution—the *Howell* matter. On the morning of trial on January 17, 2017, defendant, now represented by counsel, indicated to the court that he anticipated the state's questioning would raise incrimination issues and that he would seek to invoke his constitutional rights against self-incrimination. It is apparent from the transcript that considerable discussions occurred between the parties and the trial court off the record. The transcript reflects the parties' efforts to put those matters "on the record" after the chambers conference.

---

[1] Defendant's conviction for contempt stemmed from his refusal to testify in the related, yet separate, case heard in the municipal court of the City of Florence on January 17, 2017, *City of Florence v. Jordan Howell*, Docket #160000316, hereinafter referred to as the *Howell* matter.

Defendant, who at the time of the trial had pending charges both in the Florence municipal court and the Lane County Circuit Court, indicated that he believed his testimony could incriminate him in those pending matters. In addition, as defendant articulated, he believed his testimony was sought, in part, to build a conspiracy case for any role he might have played in Howell's false swearing charge:

"[DEFENSE COUNSEL]:   As I stated in chambers, the entire reason we're here today is because the City doesn't believe the story that both Mr. Howell and [defendant] tell, and he's subjecting himself and—I understand that's not the only—you can't take a Fifth Amendment right only to protect yourself from perjury, but it's apparently clear that that is—he's being subjected to potentially conspiracy to commit perjury charge—a perjury charge and similar type of conspiracy charge here[.]"

The court directly asked defendant to clarify whether the assertions of his counsel were accurate, that he would, in fact, invoke his rights against self-incrimination. Defendant responded that he planned to invoke. In response, the city indicated its intent in calling defendant:

"[PROSECUTOR]:  Your Honor, this is a situation where the defendant—the defendant in this matter gave a false sworn statement. Our purpose of calling [defendant] is to basically have him testify as to what he told the officer in the case that involved him and the—setting the facts as to what had occurred on that day in question.

"* * * * *

"Under the requirements, what we have the duty to do and also the ability to do is demonstrate through the testimony of the City witnesses, including [defendant], that he—he provided information to the officer which was not collaborated by the evidence that was gathered by the officer[.]

"* * * * *

"[DEFENSE COUNSEL]:  I'm under the impression that, based on our conversation in chambers, the City believes that they can question [defendant] about any of the events that happened that day, and I believe he has a right to invoke his Fifth Amendment right.

"If he's simply going to question him about what he told the officer that day, I may want to have a conversation with my client before he takes the stand and we may want to stop. * * *

"[PROSECUTOR]:   Your Honor, that is not the intent of the City to limit itself to just what he said to the officer—

"* * * * *

"[PROSECUTOR]:   Well—and, Your Honor, the part of it—there's facts here. The fact[] is that this gentleman, [defendant], pled no contest to various charges that were faced out of this investigation that resulted in the affidavit coming from the current defendant, Mr. Howell. And the City, does, in fact, plan on asking questions regarding that because it does, in fact, show as a totality of the circumstances for the jury as a trier of the fact to determine whether or not they find the testimony credible if Mr. Howell takes the stand, and also on our proof as to the officer's observations, his documentation, and the corroborative evidence as required by the—by statute to come in. So we're not looking at just asking the question."

In addition to stating its reasons for calling defendant as a witness in the *Howell* matter, the city objected to defendant's blanket invocation of his right against self-incrimination:

"[PROSECUTOR]:   The blanket request—or the request for a blanket Fifth Amendment invocation is not appropriate in this court or any court. Upon any question that he believes is somehow going to prejudice him or incriminate him, then it would be on a case-by-case—question-by-question basis."

Finally, the city indicated that it was extending an offer of immunity to defendant in exchange for his testimony:

"[PROSECUTOR]:   * * * Your Honor, just to put it on the record, and I apologize because we hadn't gotten there on this part, but I did say in chambers I did have a conversation with Mr. Erik Hasselman, and Mr. Hasselman is the deputy chief deputy for Lane County district attorney's office. He stated, I could represent to the Court, that his office would not bring any charges resulting out of the driving, meaning any driving offenses, and we went through

as to what it was including, the DUII, the hit-and-run, and the violation of operating an unsafe vehicle."

Ultimately, the court concluded that either by virtue of the plea of no contest previously entered, or by virtue of the immunity offer, defendant was not entitled to assert his rights against self-incrimination at all, regardless of the specific questions:

"THE COURT:   Well, I'll tell you what—the Court has familiarized itself with [defendant's] file, and I feel that I am pretty confident as far as what happened as far as the record, and that [defendant] pled to certain charges, two charges, and that it was clear on the record that the other charges, the DUII, the hit-and-run, the operating an unsafe vehicle, were being dismissed pursuant to plea negotiations.

"I understand there was a box that was not checked on the original judgment to that effect, but I'm confident that that's what happened and that was what was stated on the record, and it was clear to the defendant at that time. Okay.

"For that reason and based—so based on the inquiry as I understand it to be contemplated today for [defendant]'s testimony and the testimony here, I do not believe that that will compel the witness to incriminate himself.

"[DEFENSE COUNSEL]: Your Honor, absent full immunity, I don't think that that's a proper—excuse me, but I don't—absent full immunity, I don't think he can be compelled to testify.

"THE COURT:   I'm saying it doesn't—it doesn't raise that issue. Okay. Now, it's a little difficult because, of course, I am making a ruling sort of in blank because we're not actually in the middle of the testimony, but given the situation, *** I'm saying as far as the—the DUII and the hit-and-run, you know, that that's—it's not going to incriminate him.

"*****

"[HOWELL'S COUNSEL]:   And as I understand it, the Court is making a ruling that there is no Fifth Amendment privilege for the testimony regarding this—you know, that incident that's going to happen. That's on the record.

"THE COURT:    Correct.

"＊＊＊＊＊

"THE COURT:  Okay. [Defendant], do you—understanding that the Court is saying you do not have that—the right to invoke the Fifth Amendment—that doesn't apply here. Okay.—do you intend—so that the Court will direct you to testify. Do you intend to testify here today?

"[DEFENDANT]:  I will not. If I may, Your Honor, there's too many unknowns that (inaudible)—

"THE COURT:  Okay."

At that point, the court asked the city if it wanted to call defendant, outside the presence of the jury, to make an "offer of proof."

"THE COURT:  ＊＊＊ Question, does the City wish to inquire of the defendant at this point? Or not the defendant. I'm sorry. [Defendant]—

"[PROSECUTOR]:  Right.

"THE COURT:   —at this point on the subject of his not [*sic*] refusing to testify?

"[PROSECUTOR]:  Yes, I guess we need to proffer—

"THE COURT:  An offer of proof—

"[PROSECUTOR]:  —a record."

The city then called defendant to the stand and made the following inquiry:

"[PROSECUTOR]:  [Defendant], isn't it true that on October 3rd of 2015 that you made a report to the Florence Police Department reporting a hit-and-run accident?

"[DEFENDANT]:  I believe it was around that day (inaudible).

"[PROSECUTOR]:  And about—that was in the morning. Call time was someplace around 6:35 or thereabouts?

"[DEFENDANT]:  Again, that's been so long, I don't know.

"[PROSECUTOR]:  All right. And when you reported this crime taking place, did you give your location of where you—where this occurred?

"[DEFENDANT]:   Again, I'm going to have to answer that I don't remember. It's been so long.

"[PROSECUTOR]:   Do you remember an officer coming out and investigating after you reported the crime of hit-and-run to your vehicle?

"[DEFENDANT]:   I do.

"[PROSECUTOR]:   And that was Officer Kyle Elliott, who is sitting to my right. Is that correct?

"[DEFENDANT]:   I remember Officer Leonard Larson and then Elliott coming afterwards, but I might be wrong on that also.

"[PROSECUTOR]:   Do you remember telling Officer Elliott that you had been in Salem the day before for a class?

"[DEFENDANT]:   I do not recall. Again, it's been so long. And as you all well know, I suffered multiple injuries from gunshots and I was in a coma, so my memory is not as well as it used to be, so I don't know."

At this point, Howell's counsel objected to this line of questioning. In aid of the objection, counsel asked defendant to clarify whether he intended to invoke his right against self-incrimination, and defendant indicated yes, that he would not offer testimony. The court agreed that the "offer of proof" had exceeded its scope and stopped the questioning:

"THE COURT:   *** It's established that he is going to refuse to testify even though he's been told [he] doesn't have the right to do that. He's been called and subpoenaed and put on the stand and he's saying I won't testify in this trial in front of the jury."

Ultimately, defendant was convicted of criminal contempt for his refusal to testify, and this appeal followed. On appeal, defendant argues that the trial court erred in concluding that defendant could be compelled to testify or found in contempt for refusing to do so. The state argues that defendant's blanket invocation was improper. This court reviews a trial court's determination that a witness may not invoke his right against self-incrimination for legal error. *Redwine v. Starboard, LLC*, 240 Or App 673, 681, 251 P3d 192 (2011) ("We review the trial court's conclusion as to

the applicability of a privilege in this context for errors of law.").

We begin by addressing an issue of preservation. The state disputes that defendant can rely on Article I, section 12, on appeal. The state is entirely justified in raising that preservation argument, as all of the argument and discussion on the morning of trial referenced solely the Fifth Amendment to the United States Constitution. It was only upon further briefing that defendant raised Article I, section 12. But, our reading of the proceedings below convinces us of the appropriateness of a broader view.

Understandably, everything that transpired on the morning of trial did so in a shorthand manner—a trial was scheduled to commence imminently, and one witness was indicating he would not testify. Neither side had prepared briefing on that legal issue for the trial court. As is not uncommon, when the parties became aware of the potential stumbling block, conversations were had in chambers and then quickly put on the record. The trial then moved forward. After the court's initial ruling, both sides submitted lengthy memoranda of law. Those written materials relied on both the state and federal constitutions. This resulted, ultimately, in a thoughtful, written opinion from the trial court that addressed both the state and federal constitutions.

Based on how this issue transpired, we view the oral arguments and oral rulings made by the trial court in the moment as preliminary rulings. The trial court was faced with the challenge of reaching a decision and keeping the scheduled trial on track. Sometimes the reality of trial dictates that, in such situations, an initial ruling may be given, and the parties and the court will revisit it in a more thoughtful manner when time permits. Here, the written arguments of the parties and the written ruling by the trial court are not separate proceedings, but a continuation of the pretrial discussions.

At its core, the rules of preservation are grounded in practicalities, not technicalities. As the Oregon Supreme Court has noted, preservation polices are "prudential" and "pragmatic" in nature. *Peeples v. Lampert*, 345 Or 209, 220,

191 P3d 637 (2008). The *sine qua non* of preservation is procedural fairness to the parties and to the trial court. *See generally State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (distinguishing requirements for "raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*" (emphasis in original)).

In assessing whether the purposes of preservation have been met, we can look generally to, first, whether the arguments "[gave] a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples*, 345 Or at 219. Second, we look to whether the arguments "[permitted] the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise." *Id*. Finally, we consider whether the arguments "[fostered] full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Id*. at 219-20.

Our review of the record in this case convinces us that all of the purposes of preservation were met. Accordingly, we view the oral arguments and subsequent written submissions as a continuous whole. We also view the trial court's oral rulings, as well as the court's written explanation, as a whole. Because the written memoranda by the parties, as well as the trial court's written ruling, relied on the state constitution, we conclude that defendant's Article I, section 12, arguments are preserved. We turn now to the merits.

The Fifth Amendment provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative, or adjudicatory. *See Kastigar v. United States*, 406 US 441, 444, 92 S Ct 1653, 32 L Ed 2d 212 (1972). However, the privilege is not a right to refuse to honor a subpoena or take the witness stand. Rather, barring exceptional circumstances, the only way a person can assert the privilege is on a question-by-question basis. As to each question asked, the party has to decide whether or not to raise his Fifth

Amendment right. *Mitchell v. United States*, 526 US 314, 321-22, 119 S Ct 1307, 143 L Ed 2d 424 (1999) ("The privilege is waived for the matters to which the witness testifies, and the scope of the waiver is determined by the scope of relevant cross-examination[.] The witness himself * * * determines the area of disclosure and therefore of inquiry." (Internal citations and quotation marks omitted.)); *see also United States v. Bodwell*, 66 F3d 1000, 1001 (9th Cir 1995) (holding that Fifth Amendment invocation must occur on a question-by-question basis).

Barring exceptional circumstances, the requirement for a question-by-question invocation is necessary for the court to determine whether the privilege applies, by evaluating whether "the answer to that particular question would subject the witness to a real danger of * * * crimination[,]" as opposed to "a mere imaginary possibility of increasing the danger of prosecution." *Rogers v. United States*, 340 US 367, 374-75, 71 S Ct 438, 95 L Ed 344 (1951) (internal quotation marks omitted). The witness claiming the privilege bears the burden of establishing that an answer could be injurious, although the court must construe the privilege liberally "in favor of the right it was intended to secure." *Hoffman v. United States*, 341 US 479, 486, 71 S Ct 814, 95 L Ed 1118 (1951).[2]

---

[2] We note that there are two statutory provisions that directly govern the procedures for how an invocation of the right against self-incrimination should procedurally be addressed in Oregon courts. The statutes were never addressed at trial, nor by the parties on appeal. We include them for reference.

ORS 136.617 provides:

"In any criminal proceeding before a court of record or in any proceeding before a grand jury, or in any proceeding before a court of record under ORS 646.760 [Civil penalties], or in any proceeding for the imposition of remedial or punitive sanction for contempt, if a witness refuses to testify or produce evidence of any kind on the ground that the witness may be incriminated thereby, the prosecuting attorney may move the court to order the witness to testify or produce evidence. The court shall forthwith hold a summary hearing at which the prosecuting attorney shall show reasonable cause to believe the witness possesses knowledge relevant to the proceeding, or that no privilege protects the evidence sought to be produced. The witness may show cause why the witness should not be compelled to testify or produce evidence. The court shall order the witness to testify regarding the subject matter under inquiry upon such showing of reasonable cause or shall order the production of evidence upon a finding that no privilege protects the evidence sought, unless the court finds that to do so would be clearly contrary to the public interest. The court shall hold the summary hearing outside the

The privilege against self-incrimination covers both answers that would support a conviction and answers "which would furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman*, 341 US at 486. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id*. at 486-87. In assessing a person's claim of privilege, the trial court's role is to determine whether there is a risk of incrimination, and the privilege must be sustained unless it is "*perfectly clear*, from a careful consideration of all the circumstances in the case, * * * that the answer[s] *cannot possibly* have such tendency to incriminate." *Id*. at 488 (internal quotation marks omitted; emphasis in original).

Article I, section 12, provides a similar—yet analytically distinct—right that "[n]o person shall be put in jeopardy twice for the same offence [*sic*], nor be compelled in any criminal prosecution to testify against himself." The right against self-incrimination is "a personal privilege that may be waived, and, if not claimed, is deemed waived." *State of Oregon v. Hennessey*, 195 Or 355, 366, 245 P2d 875 (1952). Like the Fifth Amendment, one's right under Article I, section 12, is not a right against taking the witness stand.

---

presence of the jury and the public and may require the prosecuting attorney to disclose the purpose of the testimony or evidence. The witness shall be entitled to be represented by counsel at the summary hearing."

ORS 136.619 provides:

"A witness who, in compliance with a court order issued under ORS 33.085 [Compelling testimony of witness] or 136.617 [Motion to compel witness who may be incriminated to testify], testifies or produces evidence that the witness would have been privileged to withhold but for the court order, may be prosecuted or subjected to any penalty or forfeiture for any matter about which the witness testified or produced evidence unless the prosecution, penalty or forfeiture is prohibited by section 12, Article I of the Oregon Constitution. The testimony of the witness or evidence produced or information derived from the testimony or evidence may not be used against the witness in any criminal prosecution. However, the witness may nevertheless be prosecuted or subjected to penalty for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order. If a person refuses to testify after being ordered to testify as provided in this section, the person shall be subject to penalty for contempt of court for failure to comply with the order."

Rather, it is invoked on a question-by-question basis. "[A] person who wishes to avoid such self-incrimination ordinarily must invoke the protection of the privilege instead of answering the posed questions." *State v. Tenbusch*, 131 Or App 634, 640, 886 P2d 1077 (1994). Further, answering a question does not foreclose one's right to assert the privilege as to other questions. *State v. Kell*, 303 Or 89, 99, 734 P2d 334 (1987) (In the context of custodial interrogation, "[d]efendant was entitled to pick and choose what he wished to talk about.").

In *State v. Soriano*, 68 Or App 642, 684 P2d 1220, *aff'd*, 298 Or 392, 693 P2d 26 (1984), we held that, distinct from the Fifth Amendment, the state can only extinguish an Oregonian's right against self-incrimination under Article I, section 12, if it provides a full and adequate substitute—*i.e.*, transactional immunity:

> "We hold that Article I, section 12, of the Oregon Constitution requires transactional immunity as a substitute for the right not to testify against oneself.
>
> "*****
>
> "The citizens of Oregon are entitled, under their constitution, not merely to a 'substantial' substitute for their constitutional rights, but to one which has 'the same extent in scope and effect.' Mere use and derivative use immunity falls short of that constitutionally-required minimum.
>
> "*****
>
> "In contrast, a grant of testimonial immunity is a conscious prosecutorial choice, taken after careful consideration and with full knowledge of its results. It is not a violation of the witness' constitutional right but a determination to substitute for that right another one granted by the legislature and found by the courts to be an adequate replacement. The constitutional right given up is not to be compelled to testify against oneself. A witness granted immunity and then required to testify has not received full value for that lost right if there is any way the testimony can cause harm to the witness in that prosecution."

*Id.* at 662-64 (footnotes omitted).

The right against self-incrimination can be invoked, as in this case, by a witness, not just a defendant. The right

of a witness to refuse to answer questions on the basis of his constitutional right against self-incrimination is a personal privilege of the witness over which the defendant has no control. *State v. Harper*, 33 Or 524, 528, 55 P 1075 (1899), *overruled on other grounds by State v. Abbott*, 275 Or 611, 552 P2d 238 (1976). As such, the Oregon Supreme Court has noted:

> "Since the witness's right is personal and beyond the control of either the defendant or the state, it is quite clear that the exercise of the right by the witness should be treated as casting no inference either of guilt or innocence."

*State v. Johnson*, 243 Or 532, 538, 413 P2d 383 (1966).

In that vein, it is error to call a witness to the stand for the sole purpose of forcing that witness to invoke, in the presence of the jury, his or her rights against self-incrimination; it is likewise error to comment in argument to the jury on the failure of a witness to testify who has validly invoked that privilege. *Abbott*, 275 Or at 615; *Johnson*, 243 Or at 538; *see also State v. Froats*, 47 Or App 819, 821, 615 P2d 1078 (1980); *State v. Sutterfield*, 45 Or App 145, 607 P2d 789 (1980); *State v. Shaw*, 20 Or App 587, 532 P2d 1143 (1975). Rather, the proper procedure was set forth in *Johnson*:

> "If the state is at any time uncertain whether or not a witness will refuse to testify, this can be easily determined before the trial court in the absence of the jury * * *."

243 Or at 539.

With that framework in mind, we turn to its application here. At the outset, it is critical to highlight what is *not* at issue in this case. First, in briefing, and upon clarification at oral argument, the state does not argue that the immunity offered here for "driving crimes" qualifies as "transactional immunity" as required under Article I, section 12, and *Soriano*. *See* 68 Or App at 662. Without transactional immunity, the state does not contest that—at a minimum—some of the questions apparently contemplated by the city prosecutor would have incriminated defendant. Accordingly, the state concedes that defendant would have a right against self-incrimination as to some questions. Having so distilled

the issue, this case turns on whether defendant could, and in fact did, properly invoke his Article I, section 12, rights.

The state argues that defendant improperly asserted a blanket invocation—in effect, refusing to take the stand at all. We do not read the record in that manner. At the beginning of discussions on the record, defense counsel indicated to the court that defendant intended to invoke his right against self-incrimination. The court inquired of defendant as follows:

> "THE COURT:   And is that true, [defendant], that you intend to invoke your Fifth Amendment rights for those reasons?
>
> "[DEFENDANT]:   Yes, Your Honor."

That exchange does not reflect an improper blanket invocation. Rather, it was defendant alerting the court, and the city prosecutor, that he would be invoking his rights if called to testify. That was entirely proper under *Johnson*. 243 Or at 538.

The second point in the exchange that might represent a "blanket invocation" came later, during the "offer of proof." There, defendant did, ultimately, declare that he would not take the stand before the jury—a seemingly impermissible blanket invocation. But that statement by defendant cannot be divorced from the trial court's ruling, which came before, that defendant had no right against self-incrimination *at all*.

> "THE COURT:  Okay. [Defendant], do you—understanding that *the Court is saying you do not have that— the right to invoke the Fifth Amendment—that doesn't apply here*. Okay.—do you intend—so that the Court will direct you to testify. Do you intend to testify here today?"

(Emphasis added.)

That ruling by the trial court, and its pronouncement to defendant that he could not invoke his privilege against self-incrimination *at all*, was error. Had the trial court ruled that a blanket invocation would not be permissible and that defendant would need to invoke on a question-by-question basis, and then defendant refused to take the

witness stand, it would be a different matter. But, instead, defendant's refusal to testify at all came only *after* the trial court had ruled, without hearing the specific questions, that no right against self-incrimination applied at all. But, as acknowledged by the state on appeal, the prosecutor had, in fact, entire lines of questioning that would have implicated defendant and to which his right against self-incrimination would apply. Thus, it was not defendant's blanket invocation, but rather the court's ruling, that short-circuited the question-by-question process that should have occurred.

Accordingly, we conclude that the trial court erred in entering a judgment of contempt.

Reversed.