Submitted July 8, affirmed September 30, 2020

In the Matter of O. L. R.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. T. R.,
*Appellant.*

Jackson County Circuit Court
19JU01944; A173022 (Control)

In the Matter of O. C. D. R.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. T. R.,
*Appellant.*

Jackson County Circuit Court
19JU01946; A173023

475 P3d 931

In this juvenile dependency case, mother challenges the juvenile court's order requiring her to submit to a psychological examination. Relying on *Dept. of Human Services v. K. L. R.*, 235 Or App 1, 230 P3d 49 (2010), she argues that submitting to that exam may require her to incriminate herself in a related criminal case in violation of the Fifth Amendment to the United States Constitution. She contends that that right prevents a court from ordering her to participate in a psychological evaluation, under these circumstances, in the absence of a grant of "use immunity." *Held*: The trial court did not violate mother's Fifth Amendment right when it ordered mother to submit to a psychological evaluation in furtherance of treatment. Specifically, on this record, there was no violation because the order did not require a predicate grant of use immunity.

Affirmed.

Laura A. Cromwell, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Elena Stross, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

In this juvenile dependency case, mother appeals from the juvenile court's order requiring her to submit to a psychological examination despite her concerns that the examination may require her to incriminate herself in a related criminal case, in which she faces charges for felony neglect of her children. Mother relies on our decision in *Dept. of Human Services v. K. L. R.*, 235 Or App 1, 230 P3d 49 (2010), to argue that the court could not order her to participate in a psychological evaluation in the absence of a grant of "use immunity." In *K. L. R.* we held that,

> "(1) requiring an admission of abuse as a condition of family reunification violates a parent's Fifth Amendment rights; (2) on the other hand, terminating or limiting parental rights based on a parent's failure to comply with an order to obtain meaningful therapy or rehabilitation, perhaps in part because a parent's failure to acknowledge past wrongdoing inhibits meaningful therapy, may not violate the Fifth Amendment; and (3) providing use immunity from criminal prosecution is a necessary condition to compelling potentially incriminating statements as an inducement for full cooperation and disclosure during dependency proceedings."

235 Or App at 10. Applying *K. L. R.* here, we conclude that, on this record, the order for mother to submit to a psychological evaluation in furtherance of treatment did not require a predicate grant of use immunity. Accordingly, we affirm.

Although we have discretion to exercise *de novo* review in this case, neither party requests that we exercise that discretion, and we decline to do so. ORAP 5.40(8)(c) (stating that we exercise *de novo* review only in "exceptional" cases). Accordingly, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). Whether a court order violates a parent's rights against self-incrimination under the Oregon and United States Constitutions is a question that we review for "errors of law." *Redwine v. Starboard, LLC*, 240 Or App 673, 681, 251 P3d 192 (2011). Stated in accordance with that standard, the relevant facts are as follows.

This case concerns mother's two children who were 12 and 7 years old at the time of the dependency jurisdiction review hearing that is the subject of this case. Approximately eight months prior to the review hearing, the children were removed from mother's care and custody. The children were placed in the care of their great-aunt and great-uncle. DHS petitioned the court for jurisdiction, in part, because mother's "substance abuse interferes with her ability to parent the child[ren]" and because "the [older] child has developmental disabilities that require structure/supervision that the mother failed to, is unable to, is unwilling to, and/or cannot provide." Mother did not contest the jurisdiction of the court for those reasons.

The court held a review hearing regarding those jurisdictional bases on November 20, 2019, at which time DHS, the children's attorney, and the Court Appointed Special Advocate requested that the permanency plan hearing be moved to an earlier date, citing mother's lack of progress toward ameliorating the jurisdictional bases and that mother's visits create "behavioral issues with the kids." They also requested that the court order a psychological evaluation, in an effort to determine whether there was a psychological reason mother was not making progress and to facilitate services to assist mother with parenting.

Mother's counsel objected to changing the permanency hearing date and explained why she had not participated in services, stating:

> "So the main reason why [mother] hasn't made the kind of progress we had hoped is that there is a criminal case going on relating to one of the kids. She advises, her criminal attorney has said to not participate in services, as it might result in some self-incrimination issues."

Mother's counsel also noted that mother was willing to participate in the alcohol and drug assessment and the one-on-one parenting class, specifying that those services would not present any self-incrimination issues:

> "And we kind of know the reason why she hasn't made the progress in services is because she's afraid it might have effect on her criminal case. I think we've settled that

issue outside of court this morning and she can—she can proceed with a couple services."

DHS responded that its "goal is reunification. It's not to sabotage Mom or put Mom in jail." Mother's counsel suggested that, rather than participate in the intrusive psychological evaluation that could present self-incrimination issues, mother would agree to participate in a less intrusive mental health evaluation. DHS rejected the efficacy of a mental health evaluation in this case, noting that it is "100 percent self-reported," and if no issues are reported by mother, no services will be recommended or offered.

At the end of the hearing, mother directly addressed the court about her lack of progress, focusing her argument on her perceived lack of support from DHS, rather than self-incrimination concerns. She stated that although she was willing to participate in services, she had not received referrals from DHS and cannot pay for the services without DHS referrals.

DHS responded that the caseworker told mother that once she completes initial assessments with her chosen treatment provider, DHS will coordinate funding for services on her behalf. DHS specified that, as in most of their conversations, mother replied that she would complete the assessments after she established her new residence in a different city. Although mother established the new residence, she apparently moved back to the old residence shortly thereafter and, several months later, had yet to choose a provider to complete the assessments.

The court interjected, noting that moving residences did not provide a reason why she had not engaged in services. Mother then repeated her argument that she had not received referrals for the services, and added that her "criminal lawyer says [she] cannot go through with any kind of treatments," but she can do the alcohol and drug assessment and parenting course if she receives referrals.

Ultimately, the court set an early hearing for contested permanency, ordered that the children remain in their current placement as wards of the court, and ordered mother to complete assessments to receive her referrals, to

include the psychological evaluation. The court made no express findings regarding mother's assertion of the privilege against self-incrimination, nor did the court's order depend on the grant of any form of immunity in connection with the psychological evaluation.

On appeal, mother argues that the juvenile court erred in requiring her to participate in the psychological evaluation without use immunity, despite not directly asking the court to condition her participation on a grant of use immunity. Mother asserts that in *K. L. R.*, we held that the Fifth Amendment to the United States Constitution required the grant of use immunity to the parent in connection with an order that she participate in a polygraph examination, and that the Fifth Amendment offers similar protections here.

DHS responds that mother's argument is unpreserved because she argued only that her criminal defense attorney had advised her against participating in any services in the dependency cases, indicating that it "might result in some self-incrimination issues." Mother did not argue that the court could not order her to participate in an evaluation without a grant of use immunity.[1] On the merits, DHS argues that the psychological evaluation ordered in this case materially differs from the polygraph involved in *K. L. R.*

The Fifth Amendment provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself[.]" The Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative, or adjudicatory. *See Kastigar v. United States*, 406 US 441, 444, 92 S Ct 1653, 32 L Ed 2d 212, *reh'g den*, 408 US 931 (1972). However, "the privilege is not a right to refuse to honor a subpoena or take the witness stand. Rather, barring exceptional circumstances, the only way a person can assert the privilege is on a question-by-question basis." *State*

[1] We need not resolve the preservation dispute here because, as we explain, even assuming mother properly preserved the issue, we conclude that, on this record, the trial court was not required to condition the psychological evaluation on a grant of use immunity.

*v. Rodriguez*, 301 Or App 404, 412, 456 P3d 312 (2019). As to each question asked, the party has to decide whether or not to raise his or her Fifth Amendment right. *Mitchell v. United States*, 526 US 314, 321-22, 119 S Ct 1307, 143 L Ed 2d 424 (1999) ("The privilege is waived for the matters to which the witness testifies, and the scope of the waiver is determined by the scope of relevant cross-examination[.] The witness himself * * * determines the area of disclosure and therefore of inquiry." (Internal citations and quotation marks omitted.)).

Article I, section 12, of the Oregon Constitution provides a similar—yet analytically distinct—right that "[n]o person shall be put in jeopardy twice for the same offence [*sic*], nor be compelled in any criminal prosecution to testify against himself." The right against self-incrimination is "a personal privilege that may be waived, and, if not claimed, is deemed waived." *State of Oregon v. Hennessey*, 195 Or 355, 366, 245 P2d 875 (1952). Like the Fifth Amendment, one's right under Article I, section 12, is not a "right against taking the witness stand. Rather, it is invoked on a question-by-question basis." *Rodriguez*, 301 Or App at 414-15. A person who wishes to avoid self-incrimination "ordinarily must invoke the protection of the privilege instead of answering the posed questions." *State v. Tenbusch*, 131 Or App 634, 641, 886 P2d 1077 (1994), *rev den*, 320 Or 587, *cert den*, 516 US 991 (1995). Further, answering a question does not foreclose one's right to assert the privilege as to other questions. *State v. Kell*, 303 Or 89, 99, 734 P2d 334 (1987) (In the context of custodial interrogation, "[d]efendant was entitled to pick and choose what he wished to talk about.").

At the outset, although mother nominally cites both the Fifth Amendment and Article I, section 12 as authority in her briefing, we do not understand her to actually be advancing a separate state constitutional argument. First, mother relies on our decision in *K. L. R.*, in which we noted that the parent had "not developed a separate analysis under the Oregon Constitution." 235 Or App at 5. Accordingly, we confined ourselves to the Fifth Amendment analysis—an analysis which ultimately turned on "use immunity," a federal concept. For purposes of Oregon's Article I, section 12, right, we have held that use immunity is not the touchstone.

In *State v. Soriano*, 68 Or App 642, 662, 684 P2d 1220, *aff'd*, 298 Or 392, 693 P2d 26 (1984), we held—and the Supreme Court agreed—that, distinct from the Fifth Amendment, the state can only extinguish an Oregonian's right against self-incrimination under Article I, section 12, if it provides a full and adequate substitute—*i.e.*, transactional immunity. Because mother here does not argue for transactional immunity, but solely use immunity, we do not understand mother to be raising an argument under Article I, section 12, and, like in *K. L. R.*, we confine ourselves to the Fifth Amendment argument raised.

*K. L. R.* concerned a court ordered polygraph examination. As we summarized, that polygraph examination had a specific purpose—"to ask mother whether she had injured the child or knew who did." 235 Or App at 5. There was nothing theoretical about the inquiry in *K. L. R.*, the nature of the questioning was known, and it would clearly elicit a potentially incriminating response.

In contrast, the precise nature of the psychological evaluation ordered here is less clear. Mother herself acknowledged that she needed substance abuse treatment and was willing to engage in that service. The psychological evaluation in this case was part of that treatment. There is nothing in this record indicating the types of questions that would be presented to mother in the psychological evaluation, nor is there evidence in this record that mother would necessarily be required to incriminate herself as part of that evaluation. In *K. L. R.*, we noted the persuasive authority of several other jurisdictions facing the issue, quoting with approval the Vermont Supreme Court when it stated:

> "We have held that '[t]he trial court cannot specifically require the parents to admit criminal misconduct in order to reunite the family.' * * * We have also recognized, however, the importance of preventing a child from being subjected to an abusive environment and thus have held that reunification plans may require extensive therapy and counseling for sexually abusive parents. Furthermore, if the parents' denial of abuse interferes with effective therapy, then the court 'may act on that finding to the parents' detriment without offending the Fifth Amendment privilege."

235 Or App at 7 (quoting *In re J. A., Juvenile*, 166 Vt 625, 626, 699 A2d 30, 31 (1997) (brackets and ellipsis in *K. L. R.*; some internal quotation marks omitted)); *see also In re Interest of Clifford M.*, 6 Neb Ct App 754, 765, 577 NW 2d 547, 554 (1998) ("[T]here is a very fine, although very important, distinction between terminating parental rights based specifically upon a refusal to waive protections against self-incrimination and terminating parental rights based upon a parent's failure to comply with an order to obtain meaningful therapy or rehabilitation, perhaps in part because a parent's failure to acknowledge past wrongdoing inhibits meaningful therapy. The latter is constitutionally permissible; the former is not.").

*K. L. R.* is not limited to polygraphs, certainly. And we do not foreclose the possibility that a record could be developed in a particular case that an ordered psychological evaluation could violate the right against self-incrimination in the absence of use immunity. But discerning the fine line between adjudicating parental rights based upon a refusal to waive rights against self-incrimination and adjudicating parental rights based upon a parent's failure to comply with therapy, treatment, or rehabilitation, requires a case-by-case assessment of the record. On this record, mother has not established that the ordered psychological evaluation was so clearly incriminating in violation of her Fifth Amendment rights that it was impermissible in the absence of a blanket grant of use immunity.[2] Accordingly, the juvenile court did not err.

Affirmed.

---

[2] Nothing in our conclusion on that point, however, forecloses mother from invoking her rights against self-incrimination on a question-by-question basis in that psychological evaluation.